IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

KIANTE BUTLER,                    §
                                  §
        Plaintiff,                §
                                  §
v.                                §        CIVIL ACTION NO. H-15-3682
                                  §
DELTA AIR LINES, INC.,            §
                                  §
        Defendants.               §

<u>**MEMORANDUM AND RECOMMENDATION**</u>

Pending before the court[1] is Defendant Delta Air Lines, Inc.'s ("Defendant") Motion for Summary Judgment. The court has considered the motion, Plaintiff Kiante Butler's ("Plaintiff") responses (Docs. 75, 100), Defendant's reply (Doc. 104), all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion be **GRANTED IN PART AND DENIED IN PART.**

## I.  Case Background

On December 21, 2015, Defendant removed this action from the 165th District Court of Harris County, Texas.[2] In this suit, Plaintiff alleges causes of action for breach of contract, promissory estoppel, and negligence.[3]

## A.  <u>Factual Background</u>

---

[1]     This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. <u>See</u> Doc. 9, Ord. Dated Jan. 7, 2016.

[2]     <u>See</u> Doc. 1, Def.'s Not. of Removal.

[3]     <u>See</u> <u>id.</u>

On August 14, 2011, Plaintiff placed his daughter, A.B., an unaccompanied minor, on a flight with Defendant's airline from Cincinnati, Ohio, to Houston, Texas.[4]  The purpose of this visit was for A.B. to spend time with Plaintiff's family, A.B.'s maternal grandmother, and her half-sister.[5]  Due to Plaintiff's lack of funds for the trip, A.B.'s maternal grandmother, Gloria Jimenez ("Jimenez"), and Plaintiff's cousin, Shantel Pierce ("Pierce"), each contributed half the money for the ticket, which was charged to Jimenez's credit card.[6]  There was an extra charge to participate in the unaccompanied minor program.[7]  Plaintiff designated Pierce to pick up his daughter from the airport.[8]  Additionally, Plaintiff signed an unaccompanied minor declaration which contained some of the terms and conditions of the program.[9]

Before sending his daughter to Houston, Plaintiff spoke with Jimenez several times, who failed to inform him that A.B.'s mother, Jennifer Lopez ("Lopez") had been released from prison.[10]  Plaintiff had been awarded custody of his daughter after Lopez and

---

[4]    See Doc. 75-4, Ex. D to Pl.'s Resp., Aff. of Pl. p. 1.

[5]    See id.

[6]    See id.; Doc. 60-2, Ex. B to Def.'s Mot. for Summ. J., Dep. of Jimenez p. 13.

[7]    See Doc. 75-4, Ex. D to Pl.'s Resp., Aff. of Pl. p. 1.

[8]    See id.

[9]    See id.; Doc. 60-6, Ex. F to Def.'s Mot. for Summ. J., Unaccompanied Minor Declaration.

[10]    See Doc. 75-4, Ex. D to Pl.'s Resp., Aff. of Pl. p. 1.

accomplices broke into Plaintiff's apartment and took A.B. and Plaintiff's girlfriend's daughter in 2007.[11]  Lopez was sentenced to ten years confinement but was released early, unbeknownst to Plaintiff.[12]

Plaintiff took A.B. to the Cincinnati airport on August 11, 2014, and stayed with her in the gate area until her flight departed.[13]  Due to weather, A.B.'s flight was diverted to Dallas, but Plaintiff was never notified of this change.[14]  When A.B. later landed in Houston, Lopez and Jimenez came to pick up A.B.[15] Although Plaintiff never designated them as authorized parties to pick up the child, an airline employee released A.B. to Jimenez and Lopez without contacting Plaintiff.[16]  Pierce later arrived at the airport but Jimenez and Lopez had already picked up A.B. with Pierce's approval.[17]  Pierce testified that she "took [her] time to get there because [Jimenez] was the one able to pick the child up."[18]  When Plaintiff learned that Pierce did not pick up A.B., he

---

[11]     See id. pp. 2-3.

[12]     See id.

[13]     See id. pp. 1-2.

[14]     See id. p. 2.

[15]     See id.

[16]     See id.

[17]     See id.

[18]     See Doc. 116, Tr. of Hr'g Dated Jan. 16, 2017 p. 34.

3

called the airline and was told that Lopez had picked up A.B.[19]

Plaintiff contacted law enforcement agencies in Ohio and Texas and asked Jimenez directly for the return of his child.[20]  Lopez refused to give up A.B.[21]  Plaintiff traveled to Houston, hired an attorney, and filed a writ of habeas corpus to enforce his custody rights over A.B.[22]  After ten days, Plaintiff's custody order was enforced, and A.B. was returned to Plaintiff.[23]

This series of events stemmed from a plan formed by Plaintiff's relatives to take A.B. from Plaintiff and keep her in Houston.[24]  Before A.B. traveled to Houston, Plaintiff's family expressed concern to Jimenez about Plaintiff's treatment of A.B. and his drug use.[25]  Plaintiff's family, including Pierce, were aware that Lopez had been released from prison and that A.B. would see Lopez when A.B. traveled to Houston.[26]  Lopez, Jimenez, Pierce, and Plaintiff's grandmother planned to keep A.B. in Houston by

---

[19]  See Doc. 75-4, Ex. D to Pl.'s Resp., Aff. of Pl. p. 2.

[20]  See id.

[21]  See id.

[22]  See id. p. 3.

[23]  See id. p. 2.

[24]  See Doc. 60-2, Ex. B to Def.'s Mot. for Summ. J., Dep. of Jimenez p. 36.

[25]  See id. pp. 17-18; Doc. 60-3, Ex. C to Def.'s Mot. for Summ. J., Dep. of Lopez p. 186.

[26]  See Doc. 60-2, Ex. B to Def.'s Mot. for Summ. J., Dep. of Jimenez pp. 15, 17, 26.

enrolling her in school and taking legal action to obtain custody of A.B.[27]  Lopez, Jimenez, and Plaintiff's grandmother went shopping for school supplies for A.B., went to A.B.'s former doctor for her shot records, and visited the school.[28]  Before A.B. came to Houston, Plaintiff's grandmother gave Lopez A.B.'s Social Security card, and Lopez secured Medicaid and food stamps for A.B.[29]

## B.  **Procedural History**

Defendant filed the pending motion for summary judgment on September 27, 2016.[30]  Plaintiff filed a response along with several exhibits on October 18, 2016, after asking the court for an extension of time.[31]  Plaintiff filed an amended response[32] on December 22, 2016, and supplemental exhibits on December 26, 2016.[33]  The court granted Plaintiff's motion for leave to file the supplemental exhibits on January 5, 2017.[34]

---

[27]     See id. pp. 30-31, 36; Doc. 75-4, Ex. D to Pl.'s Resp., Aff. of Pl. p. 3.

[28]     See Doc. 60-2, Ex. B to Def.'s Mot. for Summ. J., Dep. of Jimenez; Doc. 60-3, Ex. C to Def.'s Mot. for Summ. J., Dep. of Lopez p. 180.

[29]     See Doc. 60-3, Ex. C to Def.'s Mot. for Summ. J., Dep. of Lopez p. 177.

[30]     See Doc. 60, Def.'s Mot. for Summ. J.

[31]     See Doc. 74, Opposed Mot. for Extension of Time; Doc. 75, Pl.'s Resp.; Doc. 78, Ord. Dated Oct. 20, 2016.

[32]     The substance of Plaintiff's response and amended response is similar.  The court has considered both responses in ruling on the motion for summary judgment and will collectively refer to them as "Plaintiff's response."

[33]     See Doc. 100, Pl.'s Am. Resp. to Def.'s Mot. for Summ. J.; Doc. 102, Pl.'s Supplemental Exs.

[34]     See Doc. 113, Ord. Dated Jan. 5, 2017.

## II.  Objections

Plaintiff and Defendant both raise objections to the authenticity of some of the other party's exhibits.  For purposes of authentication, Federal Rule of Evidence 901(a) requires "evidence sufficient to support a finding that the item is what the proponent claims it is."  Circumstantial evidence, such as the document itself and the circumstances surrounding its discovery, is sufficient for authentication.  In re McClain, 516 F.3d 301, 308 (5th Cir. 2008).  The Fifth Circuit "does not require conclusive proof of authenticity before allowing the admission of disputed evidence . . . .  It merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be."  Id.  (quoting United States v. Arce, 997 F.2d 1123, 1128 (5th Cir. 1993)).

## A.  **Plaintiff's Objections**

In Plaintiff's response to Defendant's motion for summary judgment, Plaintiff asks that Defendant's exhibits[35] A through H be stricken because they are irrelevant and there is no sworn verification that they are true and correct copies.  Exhibits A through D include excerpts from Plaintiff's deposition, Jimenez's deposition, Lopez's deposition, and Plaintiff's responses to

---

[35]     In his original response including these objections, Plaintiff asks that "Plaintiffs' exhibits A through D should be struck from evidence in this matter."  This is a typographical error, as it is clear from the context that Plaintiff is referring to Defendant's exhibits, not his own exhibits.

6

Defendant's discovery requests.

The court finds that Plaintiff's objections are frivolous. Plaintiff's objection that these exhibits are irrelevant is **OVERRULED**.  The depositions of Plaintiff, Jimenez, and Lopez are highly relevant in this case, as are Plaintiff's own responses to Defendant's discovery requests.  Exhibit H to Defendant's motion for summary judgment is an affidavit from one of Defendant's attorneys verifying that all the submitted exhibits are true and correct copies.  Plaintiff's objection that the exhibits are unauthenticated is also **OVERRULED**.

**B.  Defendant's Objections**

Defendant objects to Plaintiff's late-filed supplemental exhibits to the amended motion for summary judgment.  However, as the court granted Plaintiff leave to file these exhibits late, this objection is **OVERRULED AS MOOT**.

As to Defendant's challenge to Plaintiff's evidence supporting his claim for attorney's fees incurred in conjunction with the state court proceeding, the court agrees that the invoice submitted by Plaintiff is not competent summary judgment evidence, as Plaintiff has failed to demonstrate its authenticity.  However, in Plaintiff's affidavit, he avers that he spent around $900 in attorney's fees to prepare documents for the state court proceeding, which the court finds is adequate to support a claim for damages at this time.  Therefore, Defendant's objection is

7

**SUSTAINED IN PART AND OVERRULED IN PART.**

In its reply, Defendant argues that the facts in this case should be considered undisputed because Plaintiff, in his amended response to the motion for summary judgment, has not cited to specific parts of the record.  Defendant cites <u>Warnell v. BP Products, North America</u>, No. H-14-1200, 2015 WL 4064171, at *4 (S.D. Tex. July 2, 2015)(unpublished), in which the court found that some of the defendant's evidence was uncontroverted because the plaintiff did not dispute the defendant's evidence or proffer his own evidence.  However, while Plaintiff does not cite the summary judgment evidence for every factual assertion, he does attach his affidavit, and, at limited times, cites to the record. The court will consider only those facts that are supported by citation to admissible evidence and will not scour the record to locate support for Plaintiff's contentions.  Defendant's objection is **SUSTAINED IN PART AND OVERRULED IN PART.**

### III.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists on any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Stauffer v. Gearhart</u>, 741 F.3d 574, 581 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477

U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (1992). If the moving party carries its burden, the nonmovant may not rest on the allegations or denials in his pleading but must respond with evidence showing a genuine factual dispute. Stauffer, 741 F.3d at 581 (citing Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)).

### IV. Analysis

The court next examines Defendant's legal challenges to Plaintiff's claims for breach of contract, promissory estoppel, negligence, and exemplary damages.

### A.  Breach of Contract

Defendant argues that it is entitled to summary judgment on Plaintiff's breach of contract claim because he was not a party to a valid contract. Alternatively, Defendant argues that there was

no privity or consideration between Plaintiff and Defendant, and there is no evidence of damages.

A plaintiff must prove the following elements for a successful breach of contract claim under Texas law: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. Mullins v. TestAmerica Inc., 564 F.3d 386, 418 (5th Cir. 2009)(citing Aquiar v. Segal, 167 S.W.3d 443, 450 (Tex. App.–Houston [14th Dist.] 2005, pet. denied)).

### 1. Valid Contract

In order to meet the first element, Plaintiff must show: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) a communication that each party consented to the terms of the contract; (5) execution and delivery of the contract with the intent that it be mutual and binding on both parties; and (6) consideration. Coleman v. Reich, 417 S.W.3d 488, 491 (Tex. App.–Houston [14th Dist.] 2013, no pet.)(citing Advantage Physical Therapy, Inc. v. Cruse, 165 S.W.3d 21, 24 (Tex. App.–Houston [14th Dist] 2005, no pet.)).

"[C]ontract formation is a question of fact under Texas law." Delta Brands, Inc. v. Wysong & Miles Co., 203 F.3d 828, 1999 WL 1240802, at *1 (5th Cir. 1999)(unpublished)(citing Crest Ridge Constr. Grp., Inc. v. Newcourt Inc., 78 F.3d 146, 151 (5th Cir.

1996))(stating "[w]hether the parties intended to form a contract is a question for the jury."); <u>see also</u> <u>J.D. Fields & Co., Inc. v. U.S. Steel Int'l, Inc.</u>, 426 F. App'x 271, 280 (5th Cir. 2011)(unpublished)("Contract formation is a question of fact under Texas law").  If no issues of material fact exist, however, summary judgment is appropriate.  <u>Delta Brands</u>, 1999 WL 1240802, at *1; <u>see also</u> <u>Bro-Tech Corp. v. Purity Water Co. of San Antonio, Inc.</u>, 681 F. Supp.2d 791, 801 (W.D. Tex. 2010).

Defendant generally contends that no valid contract was formed between the parties.  Plaintiff counters that a valid contract was formed when he accepted the offer by Defendant to participate in the unaccompanied minor program, by the payment of A.B.'s ticket and by signing the unaccompanied minor declaration.[36]  Plaintiff argues that he followed Defendant's requirements to participate in the unaccompanied minor program but Defendant failed to honor its representations and contractual obligations.

The unaccompanied minor declaration signed by Plaintiff outlines the parental obligations under the unaccompanied minor program.[37]  Defendant's unaccompanied minor policy, attached to

---

[36]    Plaintiff also argues that Defendant admits that it breached the contract in Defendant's second response to interrogatories, wherein Defendant stated that Jimenez and Lopez picked up A.B. from the airport.  This is not an admission of a breach of contract; it is an admission that Jimenez and Lopez picked up the child.  Finally, Plaintiff argues that he was the only relevant person to the contractual relationship because he was the minor's guardian and father.  The court finds no merit in these contentions.

[37]    In addition, Plaintiff cites to Defendant's responses to Plaintiff's request for production with the text of Defendant's unaccompanied minor program, but has failed to attach this exhibit to its motion for summary judgment.  This

11

Defendant's motion for summary judgment, states in relevant part, "[u]pon arrival, if someone other than the person named at check-in is at the destination to pick up the child, [a representative of Defendant] will contact the original accompanying adult to verify the identification of the pickup person at the destination."[38]

When asked if he believed there was an oral contract, Plaintiff answered affirmatively, stating that "[t]he representations made over the phone confirming that nobody would be able to pick [A.B.] up from the airport, and she could not be released to anybody, but the person that I designated as the pick-up person, is what I relied on, so I provided [Defendant] with my designated pick-up person's information, Shantel Pierce."[39] Additionally, in his affidavit, Plaintiff stated that he spoke "with an agent prior to agreeing to allow [his] daughter to fly as an unaccompanied minor on [Defendant's airline]" and that he "made sure that [his] daughter's flight information was correctly documented."[40]

Plaintiff's evidence, the unaccompanied minor declaration, Defendant's unaccompanied minor policy, and Plaintiff's testimony

---

is not competent summary judgment evidence.

[38]   See Doc. 60-6, Ex. F to Def.'s Mot. for Summ. J., Children's Travel Pol'y p. 6.

[39]   See Doc. 60-5, Ex. E to Def.'s Mot. for Summ. J., Pl.'s Resps. to Def.'s 1st Req. for Admis. to Pl. p. 3.

[40]   See Doc. 75-4, Ex. D to Pl.'s Resp., Aff. of Pl. p. 1.

about mutual obligations between himself and Defendant, raises a
genuine issue of material fact whether the parties formed a
contract.  The unaccompanied minor policy obligated Defendant to
call Plaintiff in the event that an undesignated person attempted
to pick up A.B., and Plaintiff never received a phone call that
Lopez and Jimenez were claiming to be authorized persons to pick up
A.B. Additionally, the unaccompanied minor declaration stated that
Defendant was to take whatever action to ensure A.B.'s safe
custody, and, arguably, Defendant's actions could be found by a
jury to raise a fact issue as to whether this obligation was met.
Therefore, the question of whether Defendant and Plaintiff formed
a valid contract, and what the terms of the contract were, are
questions for the jury to determine.

### 2.  Privity of Contract or Third-party Beneficiary

Defendant alternatively argues that there was no privity of
contract because Plaintiff did not pay for A.B.'s ticket.
Plaintiff contends that he was in privity of contract with
Defendant, as evidenced by Plaintiff's signed acknowledgment of the
unaccompanied minor declaration.

In order to have standing to sue for breach of contract "the
plaintiff must either be in privity of contract with the defendant
or be a third-party beneficiary entitled to enforce the contract."
United Neurology, P.A. v. Hartford Lloyd's Ins. Co., 101 F. Supp.3d
584, 591-92 (S.D. Tex. 2015)(quoting Allan v. Nersesova, 307 S.W.3d

564, 571 (Tex. App.–Dallas 2010, no pet.))  Privity of contract exists when the plaintiff and defendant have a valid contract with each other or when a party has a contract with a defendant that is then assigned to the plaintiff.  See id. (citing Allan, 307 S.W.3d at 571).  In order to recover for breach of contract, a plaintiff must establish privity of contract between himself and the defendant.  Bass v. Hendrix, 931 F. Supp. 523, 532 (S.D. Tex. 1996)(citing cases).

The court has already found that a fact issue exists whether a contract was formed between the parties.  In making that determination, the jury will necessarily have to decide if Plaintiff was a party to a contract.

Defendant also asserts that Plaintiff has no evidence that he was a third-party beneficiary of a contract.  Plaintiff contends that he and A.B. were third-party beneficiaries of the contract of carriage to fly A.B. to Houston because he, as A.B.'s parent, benefitted from the contract.

Under Texas law, a third-party beneficiary is a donee or creditor beneficiary, not someone who merely obtains an incidental benefit to the performance of a contract.  United Neurology, 101 F. Supp.3d at 592 (citations omitted).  "The intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied." Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc., 348 S.W.3d

14

894, 900 (Tex. 2011)(citing <u>MCI Telecomms. Corp. v. Tex. Utils.</u> <u>Elec. Co.</u>, 995 S.W.2d 647, 651 (Tex. 1999)).   There is a presumption that parties enter into contracts for themselves "unless it clearly appears that they intended a third party to benefit from the contract."   <u>Id.</u>   Courts will not find the existence of an implied third party beneficiary.   <u>Id.</u>  If there are any doubts about a third-party beneficiary agreement, courts find against the existence of a third-party beneficiary.   <u>Hunt v. De</u> <u>Leuw, Cather & Co.</u>, No. 05-01-01390-CV, 2002 WL 1767220, at *3 (Tex. App.–Dallas 2002, pet. denied)(unpublished).

Plaintiff argues that he was the primary beneficiary to the contract of carriage.   While Plaintiff may have benefitted from his child's ability to fly on Defendant's airline, there is nothing explicitly raising a fact issue that he was a third-party beneficiary of any contract of carriage between Jimenez and Defendant because he was A.B.'s parent.   Summary judgment should be granted on this issue.

### 4. Consideration

Defendant contends that there was no consideration supporting a contract between it and Plaintiff because Jimenez, not Plaintiff, paid for A.B.'s ticket.

Under Texas law, "consideration is a necessary requirement for the formation of a contract.   If there is no consideration–that is, no mutuality of obligation–then there is no contract."   <u>S.C.</u>

<u>Maxwell Family P'ship, Ltd. v. Kent</u>, 472 S.W.3d 341, 345 (Tex. App.–Houston [1ˢᵗ Dist.] 2015, no pet.)(citing <u>In re 24R, Inc.</u>, 324 S.W.3d 564, 567 (Tex. 2010)(stating that "[w]hen illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation, and therefore, no contract.").

The court declines to grant summary judgment for Defendant on this issue. As outlined above, there is a genuine dispute of material fact whether a contract was formed between the parties. Therefore, the jury will have to decide if any contract was supported by mutuality of obligations.

### 5.  Damages

Defendant contends that summary judgment should be granted on Plaintiff's breach of contract claim because attorney's fees do not constitute damages, and Plaintiff may not recover for mental anguish damages in a breach of contract case.[41]

In its motion for summary judgment and reply, Defendant repeatedly argues that Plaintiff has no evidence to support his claims because he did not provide Defendant with Rule 26 disclosures. Defendant contends that the failure to provide these disclosures forecloses Plaintiff's right to recover attorney's fees. Plaintiff responds that he supplemented his Rule 26 disclosures by turning over the invoice showing that he spent $900

---

[41]     Defendant also contends that Plaintiff has no evidence of damages, citing the lack of Rule 26 disclosures by Plaintiff.  This argument has already been addressed in the objections section.

in fees to recover custody of A.B. in the state court proceeding.

### a. Actual Damages

Texas law has drawn a line between attorney's fees and damages, stating that there is a difference between "compensation owed for an underlying harm and fees that may be awarded for counsel's services." Richardson v. Wells Fargo Bank, N.A., 740 F.3d 1035, 1038 (5th Cir. 2014)(quoting In re Nalle Plastics Family Ltd. P'ship, 406 S.W.3d 168, 173 (Tex. 2013)). In the former scenario, there are some cases where attorney's fees may be characterized as compensation owed for an underlying harm and thus constitute damages, including cases where the "fees are incurred in litigation with a third party." Id. at 1038. The Fifth Circuit has said that in this type of case, the legal fees are "an independent ground of recovery" so they are not part of the attorney's fees incurred in the pending litigation. Id. (quoting Heliflight, Inc. v. Bell/Agusta Aerospace Co. LLC, No. 4:06-CV-425-A, 2007 WL 4373259, at *2 (N.D. Tex. Dec. 12, 2007)(quoting Crumpton v. Stevens, 936 S.W.2d 473, 476 (Tex. App.–Fort Worth 1996)).

As explained above, an unauthenticated invoice is not competent summary judgment evidence of Plaintiff's damages from the state court proceeding. However, Plaintiff testified about his damages in his affidavit, and for purposes of this motion, the court will assume that Plaintiff can authenticate the invoice at

trial.  Under Richardson, the attorney's fees and costs incurred by Plaintiff related to the state court proceeding constitute damages as they are fees incurred in outside litigation.  Summary judgment on these damages should be denied.

### b.  Mental Anguish Damages

In addition to the fees incurred in the state court proceeding, Plaintiff also seeks mental anguish stemming from Defendant's actions.  Defendant argues that "Texas law generally does not allow mental anguish damages for breach of contract." Zenor v. El Paso Healthcare System, Ltd., 176 F.3d 847, 866 (5th Cir. 1999)(citing Latham v. Castillo, 972 S.W.2d 66, 70 (Tex. 1998)(stating that "because the only damages alleged, mental anguish, are not recoverable under a breach of contract cause of action, this claim also fails"); see also Stewart Title Guar. Co. v. Aiello, 941 S.W.2d 68, 72 (Tex. 1997)(stating that "a breach of contract action will not support mental anguish damages.").

In his response, Plaintiff cites Dean v. Dean, 821 F.2d 279, 282 (5th Cir. 1987)(citations omitted), wherein the Fifth Circuit acknowledged a limited exception to the general rule in contract cases "where the mental anguish is shown to have been such a necessary and natural result of the breach as to have been within the contemplation of the parties at the time the contract was entered."  See also Delgado v. Methodist Hosp., 936 S.W.2d 479, 485 (Tex. App.–Houston [14[th] Dist.] 1996, no writ).  The court in Petco

<u>Animal Supplies v. Schuster</u>, 144 S.W.3d 554, 562 (Tex. App.–Austin 2004, no pet.), also discussed this line of cases, explaining that they "award[ed] mental anguish damages when arising from the breach of duties incident to certain special relationships, including a very limited number of contracts dealing with intensely emotional noncommercial subjects such as preparing a corpse for burial or delivering news of a family emergency." (internal quotations omitted)(quoting <u>City of Tyler v. Likes</u>, 962 S.W.2d 489, 496 (Tex. 1997)(citing <u>Pat H. Foley & Co. v. Wyatt</u>, 442 S.W.2d 904 (Tex. Civ. App.–Houston [14th Dist.] 1969, writ ref'd n.r.e.); <u>Stuart v. Western Union Tel. Co.</u>, 18 S.W. 351, 353 (1885)); <u>see also</u> <u>Freeman v. Harris Cty.</u>, 183 S.W.3d 885, 890 (Tex. App.–Houston [1st Dist.] 2006, pet. denied).

Plaintiff argues that he falls under the limited exception explained in <u>Dean</u> and <u>Schuster</u> warranting mental anguish damages because the mental anguish in this case was a foreseeable result of the breach of the contract between the parties. The court finds that Plaintiff has raised a fact issue whether this case falls under the limited exception of a contract dealing with an intensely emotional subject, that is the care and custody of his child.

Defendant alternatively contends that Plaintiff cannot prove mental anguish damages because he has not designated an expert witness. Mental anguish damages may be recovered by demonstrating "the nature, duration, and severity of [his] mental anguish, thus

establishing a substantial disruption in the plaintiff['s] daily routine or a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger." McCaig v. Wells Fargo Bank (Tex.), N.A., 788 F.3d 463, 482 (5ᵗʰ Cir. 2015)(citing Parkway Co. v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995))(internal quotations omitted).  However, under Texas law, "[e]xpert testimony is not required to show compensable mental anguish." McCaig, 788 F.3d at 482(citing Parkway Co., 901 S.W.2d at 444 (Tex. 1995); Gilmore v. SCI Tex. Funeral Servs., Inc., 234 S.W.3d 251, 258 n.4 (Tex. App.–Waco 2007, pets. denied).  Mental anguish damages may be proven through the plaintiff's testimony, the testimony of third parties, or by an expert witness. Id.  In his affidavit, Plaintiff avers that he experienced mental anguish as a result of Defendant's actions.  Defendant's motion for summary judgment on mental anguish damages should be denied.

### c.  Attorney's Fees

Recovery for attorney's fees is allowed in breach of contract cases, as provided in Texas Civil Practice and Remedies Code § 38.001.  Tex. Civ. Prac. & Rem. Code § 38.001(8); Hassel Constr. Co., Inc. v. Stature Commercial Co., Inc., 162 S.W.3d 664, 668 (Tex. App.–Houston [14ᵗʰ Dist.] 2005, no pet.).

Under Texas law, "[f]or a party to recover attorney's fees it must produce supporting expert testimony . . . the failure to properly and timely designate an expert witness on a fee award bars

recovery of such fees." <u>15625 Ft. Bend Ltd. v. Sentry Select Ins.</u> <u>Co.</u>, 991 F. Supp.2d 932, 946 (S.D. Tex. 2014)(citing <u>Twin City Fire</u> <u>Ins. Co. v. Vega-Garcia</u>, 223 S.W.3d 762, 770 (Tex. App.–Dallas 2007, pet. denied)("The issue of reasonableness and necessity of attorney's fees requires expert testimony."); <u>Wollett v. Matyastik</u>, 23 S.W.3d 48, 52 (Tex. App.–Austin 2000, pet. denied)("Determining a reasonable attorney's fee is a question of fact and the fee award must be supported by competent evidence"); <u>Lesikar v. Rappeport</u>, 33 S.W.3d 282, 307-08 (Tex. App.–Texarkana 2000, pet. denied)). Expert testimony is required to demonstrate that attorney's fees are reasonable and necessary. <u>Twin City</u>, 223 S.W.3d at 770. Additionally, under Rule 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial." Fed. R. Civ. P. 37(c)(1). A party may only overcome this automatic exclusion provision by demonstrating that the failure was "substantially justified or harmless." Fed. R. Civ. P. 37(c)(1).

Plaintiff has not yet designated an expert to testify as to the reasonableness and necessity of his attorney's fees incurred in this action. The deadline for Plaintiff to designate expert witnesses expired over a year ago, on June 27, 2016, and discovery ended August 26, 2016. Plaintiff's original petition demonstrated his intent to seek attorney's fees for his breach of contract

claim, but, in his responses, he has failed to explain why he never designated an expert to support his claim for attorney's fees or produced discovery to support his request for fees in this case. Under Texas law and Rule 37, Plaintiff's claim for attorney's fees incurred in this action fails as a matter of law.

## B. Promissory Estoppel

Defendant contends that Plaintiff has not provided evidence to meet the elements of a promissory estoppel claim, and, alternatively, the damages Plaintiff seeks for promissory estoppel are not recoverable.

### 1. Elements of Promissory Estoppel

"[U]nder Texas law, '[t]he requisites of promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment.'" MetroplexCore, L.L.C. v. Parsons Transp., Inc., 743 F.3d 964, 977 (5th Cir. 2014)(quoting English v. Fischer, 660 S.W.2d 521, 524 (Tex. 1983)).  Promissory estoppel is usually used as a defensive theory, but "it is an available cause of action to a promisee who relied to his detriment on an otherwise unenforceable promise." Frost Crushed Stone Co., Inc. v. Odell Geer Constr. Co., Inc., 110 S.W.3d 41, 44 (Tex. App.—Waco, 2002); see also Blackstone Medical, Inc. v. Phoenix Surgicals, L.L.C., 470 S.W.3d 636, 655 (Tex. App.–Dallas, 2015); Allied Vista, Inc. v. Holt, 987 S.W.2d 138, 141 (Tex. App.–Houston [14th Dist.] 1999, pet.

22

denied)("promissory estoppel is a viable alternative to breach of contract.").

Here, Plaintiff averred that in order to utilize Defendant's unaccompanied minor program, he had to agree to certain terms and conditions.  Plaintiff stated in his responses to interrogatories that he was told by Defendant's agents, over the phone, that A.B. would not be released to anyone other than the person he designated.  Defendant's unaccompanied minor policy stated that it would call the parent if it was going to release the child to a different person than the one named by the parent.  Additionally, the declaration that Plaintiff signed represented that Defendant would take whatever action necessary to ensure the child's safe custody.  The jury will have to determine if any representations were made that could form the basis of a promissory estoppel action.  Therefore, the court finds that Plaintiff has raised a material issue of fact as to the elements of promissory estoppel.

### 2.  Damages for Promissory Estoppel

In his complaint, Plaintiff alleges damages for attorney fees, court costs, and extreme mental anguish for his promissory estoppel claim.  Defendant interposes the same challenges to his claim as it did with the breach of contract claim, arguing that attorney's fees and court costs are not damages, and that mental anguish damages are not recoverable for a promissory estoppel claim.

For the reasons stated, a jury may award those state court

23

fees, if this cause of action is proven.

As to Plaintiff's claim for attorney's fees incurred in this action, fees are recoverable in a promissory estoppel action. <u>See, e.g.</u>, <u>Preload Tech., Inc. v. A.B. & J. Constr. Co.</u>, 696 F.2d 1080, 1093-94 (5th Cir. 1983); <u>Traco, Inc. v. Arrow Glass Co.</u>, 814 S.W.2d 186, 193-94 (Tex. App.-San Antonio 1991, writ denied); <u>Corpus Christi Day Cruise, LLC v. Christus Spohn Health Sys. Corp.</u>, 398 S.W.3d 303, 314 (Tex. App.-Corpus Christi 2012, pet. denied)(citing cases); <u>but see</u> <u>Doctors Hosp. 1997, L.P. v. Sambuca Houston, L.P.</u>, 154 S.W.3d 634, 638 (Tex. App.-Houston [14th Dist.] 2004)(in holding that a party "may not recover attorney's fees on a promissory estoppel claim," the court recognized that it was the "lone voice."). However, as explained above, Plaintiff has not designated an expert to testify on his claim for attorney's fees incurred in this action, so Plaintiff may not obtain attorney's fees for his promissory estoppel claim.

As to Plaintiff's claim for mental anguish damages, the Fifth Circuit in <u>Zenor</u> provided several reasons why mental anguish damages should not be recovered for a promissory estoppel claim, including that they: (1) "are compensatory in nature, and do not represent an injured party's reliance on a promise;" (2) mental anguish damages are generally not recoverable for breach of contract claims; and, (3) did not stem from the plaintiff's reliance. <u>Zenor</u>, 176 F.3d at 866. Here, however, the court has

found that Plaintiff has raised a genuine issue of material fact whether he falls under the limited exception to Texas's general rule that breach of contract cases do not warrant mental anguish damages.  Additionally, Plaintiff's claimed damages stem from his alleged reliance on Defendant's promises that it would ensure A.B.'s safe custody, deliver her to his designated person, and call him if someone else came to pick up the child.  Therefore, Defendant's motion for summary judgment should be denied on Plaintiff's claim for mental anguish damages.

## C.  **Negligence**

"The elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." Rodriquez-Escobar v. Goss, 392 S.W.3d 109, 113 (Tex. 2013)(quoting IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004)).

A contract may be the source of duties for both contract and tort law, and a party's actions can breach a contract and constitute a tort. Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex. 1986).  However, "[w]hen the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." Id.  As the Texas Supreme Court explained in Southwestern Bell Telephone Co. v. Delanney, 809 S.W.2d 493, 494 (Tex. 1991),

> If the defendant's conduct-such as negligently
> burning down a house-would give rise to liability

25

> independent of the fact that a contract exists between the parties, that plaintiff's claim may also sound in tort.  Conversely, if the defendant's conduct-such as failing to publish an advertisement-would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.

Plaintiff points to the source of Defendant's duty as its unaccompanied minor program.  Absent that program, Defendant would not owe A.B. any duty aside its normal ticketing obligations.  Therefore, the court finds that Plaintiff's claim for negligence fails as a matter of law.[42]

## D.   Exemplary Damages

Exemplary damages may be recovered for torts under Texas law, but in order to receive such an award, a plaintiff must show actual damages and a tortious injury distinct from a contract.  Jim Walter Homes, 711 S.W.2d at 618.  Under Texas law, "exemplary damages are not recoverable for a breach of contract, even one breached maliciously, as a matter of law." Schuster, 144 S.W.3d at 567 (citing Jim Walter Homes, 711 S.W.2d at 618).  Also, exemplary damages also cannot be awarded for a promissory estoppel claim, as exemplary damages are not based on a party's reliance on a promise.

---

[42]    Federal Rule of Civil Procedure 56(f) allows the court, "[a]fter giving notice and a reasonable time to respond," to either "grant summary judgment for a nonmovant" or to "grant the motion on grounds not raised by a party." Fed. R. Civ. P. 56(f); see also Nautilus Ins. Co. v. Home Remedy Servs., LLC, No. H-09-3508, 2011 WL 13130886, at *8 (S.D. Tex. 2011); Norton v. Assisted Living Concepts, Inc., 786 F. Supp.2d 1173, 1186-87 (E.D. Tex. 2011).  A district court may sua sponte enter summary judgment "only if the losing party is on notice and has the opportunity to come forward with all its evidence." Luig v. North Bay Enterprises, Inc., 817 F.3d 901, 905 (5th Cir. 2016); see also Celotex, 477 U.S. at 326.

<u>Zenor</u>, 176 F.3d at 865 (stating that "[u]nder Texas law, only reliance damages are recoverable for a promissory estoppel claim."); <u>see also</u> <u>MetroplexCore</u>, 743 F.3d at 977-78.  Because Plaintiff's negligence claim should be denied, Plaintiff's claim for exemplary damages also fails.

## IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED IN PART AND DENIED IN PART**. The remaining claims are Plaintiff's claims for breach of contract and promissory estoppel.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 26th day of July, 2017.

U.S. MAGISTRATE JUDGE

27